IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. BEVERLY LINDSAY, | : | |
| | : | |
| Plaintiff, | : | No. 4:06-CV-01826 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| THE PENNSYLVANIA STATE UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

April 9, 2008

**BACKGROUND:**

On September 18, 2006, plaintiff Dr. Beverly Lindsay instituted this civil action against defendant, the Pennsylvania State University ("Penn State"). In her complaint, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 (Count I), the Americans with Disabilities Act (Count II), Title IV of the Education Amendments Act of 1972 (Count III), hostile work environment (Count IV), and breach of contract (Count V).

The parties are now conducting discovery. On October 24, 2007, plaintiff filed a "Motion to Compel Medical Authorizations." (Rec. Doc. No. 29.) On December 10, 2007, we granted the motion in part and ordered plaintiff to

1

authorize the release of all medical records that were relevant or reasonably calculated to lead to relevant evidence regarding her ADA claim.

On January 31, 2008, plaintiff filed a "Motion to Quash Defendnat's [sic] Subpoenas to Hampton University, University of Georgia, and Dr. Wayne Morris." (Rec. Doc. No. 69.)  On February 10, 2008, plaintiff filed a "Motion for Contempt and Sanctions for Violation of Court Orders."  (Rec. Doc. No. 70.)  Finally, on February 15, 2008, plaintiff filed a "Motion for Declaratory Judgment Covering Contents of Subpoenas, Discovery Documents, Etc. Regarding Plaintiff's Medical Information and Information Pre-Dating the Parties' Prior Settlement Agreement." (Rec. Doc. No. 72.)  All three motions are ripe for disposition.  For the following reasons, we will deny all three motions.  Furthermore, we will modify our December 10, 2007 order and order plaintiff to authorize the release of all of her medical records.

**DISCUSSION:**

### I.  Plaintiff's Motion to Quash

Plaintiff has been employed by defendant since 1996 and is currently a professor in the College of Education.  (Compl., Rec. Doc. No. 1, ¶¶ 5, 16.) Plaintiff's complaint includes an allegation that defendant violated the Americans

with Disabilities Act by failing to accommodate plaintiff's medical condition.  (Id., ¶ 24.)  Specifically, plaintiff alleges that defendant failed to provide plaintiff with a suitable chair and other specific office equipment and also failed to provide plaintiff with certain travel arrangements that would accommodate her medical condition.  (Id. ¶¶ 24-36.)  Furthermore, plaintiff has alleged that this failure to accommodate has resulted in a worsening of her medical condition.  (Id. ¶ 38.)

On January 24, 2008, defendant served subpoenas on Dr. Wayne Morris, Hampton University, and the University of Georgia.  (Rec. Doc. No. ¶ 2.)  Plaintiff requested information regarding plaintiff's prior employment from the university and requested medical information from all three recipients.  (Id.)  Plaintiff alleges that these subpoenas were served in direct violation of the court's December 10, 2007 order because they requested all medical records, as opposed to medical records that are relevant or reasonably calculated to lead to relevant evidence regarding plaintiff's ADA claim.  (Id. ¶¶ 3-4.)  Furthermore, plaintiff asserts that to the extent the subpoenas request information regarding plaintiff's prior employment at the two universities, this information is irrelevant due to the fact that the instant case deals with matters from 2003 forward.  (Rec. Doc. No. 71, at 3-4.)

Defendant replies that plaintiff identified bi-lateral carpal tunnel syndrome,

3

bi-lateral ulna syndrome, osteoarthritis, bursitis, and spinal curvature as her alleged disability on her EEOC questionnaire. (Rec. Doc. No. 75, at 5.) Furthermore, defendant states that plaintiff specifically listed Dr. Morris as a physician who treated her for her alleged disability in the mid-1990s and prescribed various travel accommodations as a result of these conditions. (Id.) Therefore, defendant argues that the relevance of these medical records is clear.
(Id. at 9.) As to the subpoenas to the universities, defendant alleges that, although these subpoenas seek employment records from before 2003, these records may be relevant to defendant's potential defenses. (Id. at 13.)

    Because we agree with defendant's contention that the materials sought by the subpoenas are relevant, or at least reasonably calculated to lead to relevant evidence, and because plaintiff has not filed a reply brief to address defendant's arguments, we will deny plaintiff's motion to quash. It appears clear that medical records from Dr. Morris are relevant to plaintiff's various conditions. Plaintiff does not argue that Dr. Morris treated plaintiff for medical issues unrelated to her medical claim. Therefore, this subpoena is proper. As to the subpoenas to the universities, we also believe they are proper in order to permit defendant to determine what accommodations, if any, she requested at these universities as well as any potential evidence that her alleged injuries may have already existed. See

Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 136 (E.D.Pa. 2001) (Green, J.) (concluding that defendant should be permitted to discover information indicating that the plaintiff's emotional distress came from factors other than defendant). Therefore, we will deny this motion.

## II. Plaintiff's Motion for Contempt and Sanctions

On October 16, 2007, defendant issued subpoenas to University Orthopedics Center (UOC) and Dr. A. Jaime Alianiello, O.D. (Rec. Doc. No. 78, at 4-5.) Plaintiff did not move to quash these subpoenas. Rather, it appears that on November 1, 2007, plaintiff sent letters to Dr. Alianello and UOC instructing them not to release any information until plaintiff provided them with a release. (Rec. Doc. No. 70, ¶ 3.) It is disputed as to whether plaintiff sent a copy of these letters to defense counsel. (Rec. Doc. No. 78, at 5; Rec. Doc. No. 80, at 2.) UOC and Dr. Aliniello produced documents pursuant to defendant's request on October 31, 2007 and November 14, 2007, respectively. (Rec. Doc. No. 78, at 5.) It does not appear that defense counsel notified plaintiff that UOC and Dr. Aliniello had complied with the subpoenas. On January 25, 2008, plaintiff's counsel learned that one of plaintiff's medical providers had sent plaintiff's file to defendant. (Rec. Doc. No. 70, ¶ 8.)

Rule 37(b) of the Federal Rules of Civil Procedure authorizes a court to

impose sanctions for failure to comply with a court order during discovery.  In the instant case, plaintiff alleges that defendant did not comply with the court's December 10, 2007 order, which ordered plaintiff to authorize the release of only those medical records that were relevant or reasonably calculated to lead to relevant evidence regarding her ADA claim.

As a preliminary matter, we note that our December 10, 2007 order was pursuant to defendant's motion to compel medical authorizations, not a protective order by plaintiff to prevent defendant from discovering plaintiff's medical records.  Furthermore, the subpoenas at issue in this motion were issued on October 16, 2007, well before the December 10, 2007 order.  Finally, we note that plaintiff never moved to quash these subpoenas and defendant never withdrew them.  Rather, defendant simply attempted to contact the recipients and instruct them not to comply.  Thus, it should not be surprising to plaintiff that the recipients complied with subpoenas that were never quashed or withdrawn.  To the extent plaintiff's motion is based on defendant's failure to notify plaintiff that the recipients had complied with the subpoenas and provided defendant with various medical records, we are unaware of any obligation on defendant to do so, although it may be wise to do so in a situation such as this.  Finally, to the extent plaintiff appears to take issue with the recipients' decisions to comply with the subpoenas

without a medical release, we do not understand why this would form a basis for sanctions against defendant. Therefore, because we find that defendant has not failed to comply with any court order, we will deny plaintiff's motion.

### III.  Plaintiff's Motion for a Declaratory Judgment

Plaintiff's final motion requests a declaratory judgment 1) limiting all future requests and receipt of plaintiff's medical records to that set forth in the court's December 10, 2007 order, 2) requiring that all documents responsive to requests by defendant be sent to plaintiff's counsel to ensure compliance with the December 10 order, 3) requiring defendant to reimburse plaintiff for all costs and fees involved in the review of documents, and 4) such other relief as may be just and proper. (Rec. Doc. No. 79, at 7-8.)

Defendant replies that a motion for declaratory judgment is improper. (Rec. Doc. No. 82, at 5-6.) Specifically, it argues that a declaratory judgment is sought by a petition or a complaint, not by a motion. (Id.) We agree. Rule 57 of the Federal Rules of Civil Procedure simply states that the Federal Rules of Civil Procedure govern the procedure for obtaining a judgment under the Declaratory Judgment Act. It does not provide a basis for making a motion. Fusco v. Rome Cable Corp., 859 F.Supp. 624, 628 (N.D.N.Y. 1994) (commenting that "Rule 57 does not provide a basis for making a motion; it just acknowledges the availability

of declaratory judgment as a remedy"); Int'l Brotherhood of Teamsters v. Eastern Conference of Teamsters, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (stating that "[b]ecause an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment"). Furthermore, even if such a motion were proper, for the reasons we have discussed in connection with plaintiff's motion to quash and motion for contempt and sanctions, we are unable to find any wrongdoing by defendant. Therefore, we will deny this motion.

### IV. Modification of the Court's December 10, 2007 Order

As we have mentioned, on December 10, 2007, pursuant to defendant's motion to compel plaintiff's medical authorizations (Rec. Doc. No. 29), we entered an order which required that plaintiff authorize the release of all medical records which are relevant to her ADA claim or reasonably calculated to lead to relevant evidence regarding that claim. (Rec. Doc. No. 45.) In that order, we specifically noted that defendant was not entitled to plaintiff's medical records that were not relevant or reasonably calculated to lead to relevant evidence regarding her ADA claim. (Id. at 3.) Because this ruling has proved unworkable, we will now modify it to require plaintiff to authorize the release of all of her medical records. See Butler v. Burroughs Wellcome, Inc., 920 F.Supp. 90, 92 (E.D.N.C. 1996) ("In an

8

action under the ADA, a plaintiff's medical history is relevant in its entirety."). When we made our prior ruling, we were working under the assumption that it would be clear-cut whether the medical records were or were not related to plaintiff's disability. Now that plaintiff has seized upon the language in our December 10 order to challenge defendant's requests for <u>all</u> medical records to medical providers that seemingly only treated plaintiff with respect to her disability, it appears that this will not work. Therefore, the only way that we believe that defendant will be able to obtain all discoverable medical information with respect to plaintiff's disability will be to require plaintiff to authorize the release of all of her medical records. We certainly do not expect plaintiff's medical providers to be able to determine which medical records are discoverable in this case and which are not. Similarly, we do not believe it would be fair for plaintiff to unilaterally determine (and be reimbursed by defendant for time spent determining) which records are discoverable, especially when she voluntarily elected to place her medical disability at issue in this case but yet is extremely adamant about her right to privacy with respect to her medical records. Yet, we do understand that plaintiff's medical records are undoubtedly entitled to privacy. We believe the confidentiality order that is in place in the instant case will provide sufficient protection for plaintiff's privacy rights. Similarly, we have no doubt that

defendant has little interest in medical records that have no relevancy to the instant case. Therefore, we will modify our December 10 order to compel plaintiff to authorize the release of all of her medical records.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's "Motion to Quash Defendnat's [sic] Subpoenas to Hampton University, University of Georgia, and Dr. Wayne Morris" is DENIED. (Rec. Doc. No. 69.)

2. Plaintiff's "Motion for Contempt and Sanctions for Violation of Court Orders" is DENIED. (Rec. Doc. No. 70.)

3. Plaintiff's "Motion for Declaratory Judgment Covering Contents of Subpoenas, Discovery Documents, Etc. Regarding Plaintiff's Medical Information and Information Pre-dating the Parties' Prior Settlement Agreement" is DENIED. (Rec. Doc. No. 72.)

4. Our December 10, 2007 order is modified to order plaintiff to authorize forthwith the release of all medical records.

                s/ James F. McClure, Jr.
                James F. McClure, Jr.
                United States District Judge